NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2656-12T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BRIAN A. GREEN, a/k/a BRYAN
GREEN, BRYAN A. GREEN,
ANTHONY GREEN, DANNY GREEN,

     Defendant-Appellant.

_____

<table>
<tr><td>APPROVED FOR PUBLICATION<br><br>September 21, 2016<br><br>APPELLATE DIVISION</td></tr>
</table>

Submitted September 17, 2015 — Decided  September 21, 2016

Before Judges Lihotz, Nugent and Higbee.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-02-00124.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the briefs).

Grace H. Park, Acting Union County Prosecutor, attorney for respondent (Nasheena D. Porter, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

HIGBEE, J.A.D.

Defendant, Brian Green, appeals from his conviction for possession of less than fifty grams of marijuana in violation of N.J.S.A. 2C:35-10(a)(4), a disorderly persons offense, and for possession of more than one ounce but less than five pounds of marijuana with intent to distribute in violation of N.J.S.A. 2C:35-5(b)(11), a third-degree offense. He further appeals from his sentence of six years in State prison with three years of parole ineligibility. Defendant raises the following issues on appeal:

POINT I

THE STATE PRESENTED HIGHLY IMPERMISSIBLE EXPERT TESTIMONY THAT INFRINGED UPON THE JURY'S FACT-FINDING FUNCTION, AND DENIED THE DEFENDANT A FAIR TRIAL, NECESSITATING REVERSAL. U.S. CONST. AMEND. VI; N.J. CONST. ART. 1, PAR. 9. (PARTIALLY RAISED BELOW).

POINT II

THE STATE PRESENTED EVIDENCE THAT THE DEFENDANT POSSESSED BULLETS, WHICH WAS BOTH IRRELEVANT AND HIGHLY PREJUDICIAL, NECESSITATING REVERSAL. (NOT RAISED BELOW).

POINT III

THE STATE PRESENTED IRRELEVANT AND MISLEADINGLY INCOMPLETE EVIDENCE TO THE GRAND JURY, NECESSITATING DISMISSAL OF THE INDICTMENT. (PARTIALLY RAISED BELOW).

POINT IV

THE STATE VIOLATED THE <u>BANKSTON</u> DOCTRINE BY STATING IN ITS OPENING THAT THE POLICE HAD RECEIVED INFORMATION WHICH LED THEM TO BELIEVE THAT DRUGS WERE BEING SOLD AT THE SCENE OF THE SEIZURE, NECESSITATING REVERSAL. <u>U.S. CONST.</u> AMENDS. VI, XIV; <u>N.J. CONST.</u> ART. 1, PAR. 9.

<u>POINT V</u>

THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.

> A. The Parole Disqualifier Is Disproportional, And Therefore Excessive.
>
> B. The Court Erred In Imposing An Extended Term, Or A Sentence Above The Extended-Term Minimum.

In a supplemental pro se letter brief defendant raises the following additional arguments: the identity of the confidential informant who advised police that he had purchased drugs from the defendant should have been disclosed; the affidavit in support of the search warrant, which allowed the police to search the defendant's home and automobile, was defective; and it was error to merge the disorderly person conviction with the third-degree conviction.

For the following reasons, we conclude the State's drug expert's testimony invaded the fact-finding role of the jury. Its admission at trial was plain error and we reverse and remand for a new trial.

A-2656-12T3

The record discloses the following facts. The police obtained information from a confidential informant that defendant was selling drugs from a motor vehicle and his residence. The confidential informant did not testify at trial, and the court did not require the informant's identity be disclosed as requested by defendant.

After obtaining a search warrant for the vehicle and defendant's residence, the police stopped defendant and a co-defendant in the vehicle and searched them. The search of the automobile, defendant and co-defendant yielded no drugs or contraband, but the police obtained keys to defendant's residence. Several police officers went to defendant's residence to perform the authorized search. They entered the building through a door on the ground-level, which opened onto a stairway. The officers ascended the stairs to enter the residence. The layout of the second floor and the occupants of each bedroom were the subject of substantial testimony at trial because those facts implicated the critical issue of who possessed the drugs the police seized from the dwelling.

The landlord, who operated a restaurant on the first floor and owned the building, testified he rented four separate bedrooms on the second floor to different individuals. He

testified defendant, co-defendant Tristian A. Gooden,[1] and Edward K. Boyce[2] rented three separate rooms and were still living in the residence when the search took place. Each paid rent weekly every Sunday. At one time, two other men lived together in a fourth bedroom, but one left several months earlier. The other stayed and paid the rent for some time, but then stopped. The landlord was unsure if this man still occupied the room at the time of the search.

The landlord testified the tenants shared a common hallway, kitchen, bathroom, and hall closet. The second floor was described during the trial as a residence, an apartment, and a rooming house. Each tenant was charged and separately paid rent.

The police officers who searched the premises testified they found the doors to all rooms open and unlocked, except, for what was described as bedroom number four, where they found Boyce. According to the police, Boyce was the only person present when they entered the living quarters. No drugs or drug paraphernalia were found in his bedroom.

---

[1]   Gooden was charged with the same drug offenses as defendant and was tried with defendant. He was acquitted of all charges by the jury. He did not testify.

[2]   Originally, Boyce was charged but the charges were dismissed.

In what was identified at trial as bedroom two, the police found no sheets, pillows, clothing or personal items to suggest the room was occupied. Under the bed, police found an "Ed Hardy" bag, which contained "a large quantity of marijuana along with individually packaged bags of marijuana and new and used Ziploc bags used to package marijuana." The marijuana in the "Ed Hardy" bag weighed 15.8 ounces. This was the largest cache of marijuana found on the premises. Also found were loose, unused, purple Ziploc bags and two bullets sitting on the dresser.[3]

The landlord identified bedroom two as the room rented by the man who stopped paying rent sometime before the search. Defendant's witness, who identified herself as defendant's girlfriend, testified this was defendant's room, although, the landlord testified defendant had always occupied what was designated as bedroom one and paid a slightly higher rent for it because it was the largest.

---

[3] Defendant was charged initially with possession of bullets, but those charges were dismissed. The bullets should not have been mentioned at trial, but Detective O'Brien briefly mentioned during his testimony he found some bullets in room two. Although improperly elicited by the prosecutor, this testimony was not sufficiently prejudicial by itself to warrant a new trial, but should be avoided in any retrial. The error adds to the cumulative effect of the other trial errors.

A-2656-12T3

In bedroom one, a wallet was found in the dresser containing items with defendant's name on them and $377 in cash. The room also contained a pink notebook, which had names listed followed by numbers which appeared to be a ledger. The room contained a refrigerator; the freezer section held seven one gallon Ziploc freezer bags containing residue of a brownish green plant. This substance was identified by the State's chemist as marijuana residue. There was a box of unused clear sandwich bags on top of the refrigerator. Finally, there was a knotted plastic bag found containing 28.9 grams of marijuana.

In bedroom three, the search revealed an apparently occupied room with a made bed, clothing, and other personal items. There was testimony from the landlord that co-defendant Gooden was living in room three at the time of the search.

In the dresser were various documents containing co-defendant Gooden's name and a Ziploc bag containing several small Ziploc bags. Hidden in the area between the drop ceiling and the old ceiling was a digital scale, a box of clear sandwich bags, and a bag holding plastic bags that contained a green leafy residue. Another officer who created the evidence log also identified plastic wrap found in room three.

The search did not reveal any items of interest in the kitchen or bathroom; however, in the common hall closet there

A-2656-12T3

were two plastic bags holding 2.2 grams and 6.2 grams[4] of marijuana, respectively, as well as another digital scale.

At trial, the officers who conducted the search described what they found in each room. The State presented expert testimony from a chemist who testified all plant product and residue was marijuana, and there was marijuana residue on one of the scales. The State also called a narcotics expert to describe drug distribution practices to the jury. The expert, Detective Brendan Sullivan, gave his opinion on "intent to deliver" versus "simple possession" of marijuana. Sullivan is an employee of the Union County Prosecutor's Office and worked for five years in the narcotics unit.

Sullivan told the jury he previously testified approximately twenty-five times in court as an expert on "whether a person possessed narcotics for distribution rather than for personal use." Sullivan also stated he testified as an expert on "narcotics use, packaging, and distribution." He was asked if he ever declined a request to serve as an expert, and he testified he had declined to testify previously on more than one occasion, when asked by assistant prosecutors to render an opinion in distribution cases. Sullivan stated he declined to

---

[4] The exact quantity of marijuana found in each bag in the closet was described differently at times during the trial but the total amount never exceeded nine grams.

render an expert opinion in those cases, because he determined in those cases, after reviewing the State's files, the narcotics possessed were for personal use.

Once qualified, Sullivan opined as follows in response to the prosecutor's questions:

> [PROSECUTOR]: Detective, at this time I'm going to place before you and the jury a hypothetical question and after the hypothetical question I will ask you certain general questions relating to the hypothetical question. Assume that a legal search had been executed on --
>
> [CO-DEFENDANT'S ATTORNEY]: Objection, Your Honor.
>
> [THE COURT]: It's not necessary for the -- for the opinion to -- to delve into whether or not a search was legal. Just go into the facts of the case. I'll sustain the objection. Rephrase the question.
>
> [PROSECUTOR]: Assume that a search had been executed on an apartment. Assume that in one bedroom there was found a clear plastic bag with 28.9 grams of marijuana. In the same bedroom there was a wallet with $377 in it. The currency was in 22 1-dollar bills, 7 5-dollar bills, 10 10-dollar bills, 6 20-dollar bills, and 2 50-dollar bills.
>
> Assume further that seven multi-colored gallon Ziplock bags with marijuana residue are found in the freezer in that room. Assume that a pink ledger with names and numbers and quantities are found in the room. Assume that two cell phones are found.
>
> Now assume in a second bedroom in the same apartment hidden in a drop ceiling is

found a Max 5000 scale, white shopping bags with marijuana residue in them, and green shrink wrap. Assume there were also found in this bedroom a package of numerous small Ziplock bags.

Assume that in an adjacent room which is open is found a black Ed Hardy bag with 15.8 ounces of marijuana packaged in a gallon bag similar to the 7 bags found in one of the bedrooms that contained marijuana residue and it also contains numerous small Ziplock bags.

Assume also that in a common closet in the hallway there is found a black bag that contained another Max 5000 scale together with numerous small Ziplock baggies. Assume in the same closet that the -- that 2 clear plastic bags containing 6.2 grams and 2.2 grams of marijuana is found. Also, assume that nothing else relevant to the search warrant is found in the --

[CO-DEFENDANT'S ATTORNEY]: Objection, Your Honor.

[THE COURT]: Sustained.

[PROSECUTOR]: I'm sorry.

[THE COURT]: Strike the last portion.

[PROSECUTOR]: Also assume that nothing else relevant is found in the apartment. Based on the facts I've given you in this hypothetical do you have an opinion as to whether --

[CO-DEFENDANT'S ATTORNEY]: The marijuana --

[PROSECUTOR]: Do you have an opinion as to whether the drugs that were found in the apartment were possessed for personal use or for distribution purposes?

[CO-DEFENDANT'S ATTORNEY]: Objection. Intent to distribute.

[PROSECUTOR]: I'm sorry.

[THE COURT]: I'll allow the --

[CO-DEFENDANT'S ATTORNEY]: It's --

[THE COURT]: -- question as phrased.

[CO-DEFENDANT'S ATTORNEY]: Okay.

[PROSECUTOR]: Or intent to distribute.

[SULLIVAN]: Yes. It would be my opinion that possessors of these items -- given the totality of the circumstances the possessor of these items did in fact possess them with the intent to distribute them.

. . . .

[PROSECUTOR]: So based on all these factors you just mentioned, what is your opinion as to whether or not the drugs and paraphernalia found in this hypothetical apartment were for personal use or for possession with intent to distribute?

[SULLIVAN]: I completely am of the opinion that these -- this was possessed with the intent to distribute. And, furthermore, that this was a classic street level marijuana distribution operation.

The jury acquitted co-defendant Gooden and convicted defendant of possession with intent to distribute marijuana. N.J.S.A. 2C:35-5(b)(11).

On appeal, defendant first argues the admission of Sullivan's testimony was "plain error." He asserts the

11                                          A-2656-12T3

testimony was prejudicial, crossed the boundaries established by the Supreme Court for testimony by drug experts, and infringed upon the jury's fact-finding function. Because defendant did not raise this argument below, this issue is reviewed under the "plain error" standard, which provides reversal is mandated only for errors "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2. Accordingly, the test to apply is whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

The Supreme Court recently addressed the struggle our courts encounter governing the use of drug expert testimony. In State v. Cain, 224 N.J. 410, 426-27 (2016), the Court explained the role a drug expert plays in providing information about drug distribution:

> Experts can help jurors understand the indicia of a distribution operation, such as how drug traffickers package and process drugs for distribution. Experts can shed light on the significance of the quantities and concentrations of drugs, the value of drugs, the use of identifiable logos on drug packaging, and the function of drug paraphernalia, e.g., scales, baggies, and cutting agents.
>
> [Id. at 426 (citation omitted).]

Cain also underscored the need to assure drug expert testimony did not intrude upon the jury's fact-finding, explaining:

> In State v. Odom, 116 N.J. 65, 80-81 (1989), we held that an expert witness in a drug-distribution case could testify to the ultimate issue of fact — whether a defendant possessed drugs with the intent to distribute. We cautioned, however, that the expert's testimony should not amount to a pronouncement of guilt. Allowing an expert to offer an opinion on a defendant's guilty state of mind in a drug case while prohibiting the same expert from offering an opinion on defendant's guilt are not easily reconcilable principles. In a series of cases since Odom, we have attempted to curtail the misuse of expert testimony that has intruded into the jury's exclusive role as finder of fact.
>
> [Id. at 413.]

Previously, the Court suggested in Odom that one way to prevent the intrusion into the jury's fact-finding role was to use hypothetical questions, without a defendant's name and without describing the crime in statutory language. Odom, supra, 116 N.J. at 82. In Cain, the Supreme Court, frustrated by the misuse of these hypothetical questions, went further and changed their long standing position, declaring:

> We now join those jurisdictions that limit the scope of expert testimony in drug cases. Going forward, in drug cases, an expert witness may not opine on the defendant's state of mind. Whether a defendant possessed a controlled dangerous

13                                          A-2656-12T3

substance with the <u>intent</u> to distribute is an ultimate issue of fact to be decided by the jury.

[<u>Cain</u>, <u>supra</u>, 224 <u>N.J.</u> at 429.]

We must determine whether this change as to what a drug expert can opine was meant to be applied retroactively to this case and others tried before <u>Cain</u>, pending on appeal. When examining the retroactive effect of a new rule of law, the Supreme Court has instructed:

> This Court has four options in any case in which it must determine the retroactive effect of a new rule of criminal procedure. The Court may decide to apply the new rule purely prospectively, applying it only to cases in which the operative facts arise after the new rule has been announced. Alternatively, the Court may apply the new rule in future cases and in the case in which the rule is announced, but not in any other litigation that is pending or has reached final judgment at the time the new rule is set forth. A third option is to give the new rule "pipeline retroactivity," rendering it applicable in all future cases, the case in which the rule is announced, and any cases still on direct appeal. Finally, the Court may give the new rule complete retroactive effect, applying it to all cases, including those in which final judgments have been entered and all other avenues of appeal have been exhausted.

> [<u>State v. Knight</u>, 145 <u>N.J.</u> 233, 249 (1996) (citations omitted).]

We can ascertain the Court did not intend to give the new rule complete retroactive effect since the Court used the words

"going forward," nor did the Court intend the new rule to be applied purely prospectively, as the Court sent Cain back for retrial. Cain, supra, 224 N.J. at 429, 436. The question before us is whether the second or the third option set forth in Knight applies. We look to the Supreme Court's guidance in State v. Earls 214 N.J. 564 (2013) to answer this question.

The Court in Earls identified three factors to be evaluated when considering whether a holding should apply retroactively:

> (1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who administered it, and (3) the effect a retroactive application would have on the administration of justice.
>
> [Id. at 590 (quoting Knight, supra, 145 N.J. at 251).]

We consider each of these factors in turn. As to the first factor, the purpose of the new rule is to prevent drug experts from intruding into the jury's exclusive province by expressing an opinion, implicitly or explicitly, on defendant's guilt. Applying the new rule to cases still on appeal would serve this purpose.

As to the second factor, weighing the degree of reliance placed on the old rule by those who administered it, since Odom was decided in 1989, the Court reiterated a drug expert may not

usurp the jury's function or opine on the guilt of defendants. See Cain, supra, 224 N.J. at 423 (explaining the Court "slowly retreated from some of the broader implications of Odom"). The clarification of that point now provided by Cain cannot be deemed a surprise, considering the Court's prior discussions criticizing drug expert opinions offered through the use of hypothetical questions to uniformly track very specific facts presented during trial. Although prosecutors have relied upon their ability to use hypothetical questions, their reliance was not entirely justified in view of the Court's pronouncements in prior cases. In State v. Nesbitt, 185 N.J. 504, 514 (2006), the Court disapproved of a hypothetical question saying, "Odom should not be misconstrued to signal our willingness to accept, carte blanche, the use of hypothetical questions asked of law enforcement experts in all drug charge settings." In State v. Reed 197 N.J. 280, 293 (2009), the Court cautioned prosecutors and trial courts that "Odom's continued application is not without boundaries." The "new rule" was imposed to prevent circumvention of the existing law, that is to curtail drug experts from opining on defendant's guilt.

As to the third factor, applying the rule retroactively there is no evidence presented that it would unduly burden the justice system. Cain does not impact decisions or actions that

were already decided on appeal. It also does not impact irreversible actions taken by law enforcement officers in reliance on prior law. Nor does it require new Attorney Guidelines. There will be no unfair prejudice to the State in reversing cases pending appeal that involve improper hypothetical questions. We routinely remand cases for new trials where error has prevented defendants from receiving a fair trial.

After analyzing the three factors set forth by the Court in Earls, we conclude, unless we are instructed to the contrary, the Court intended pipeline retroactivity to apply to the Cain decision.

We further conclude that expert testimony in this case had the clear capacity to cause an unjust result. As Justice Albin wrote in State v. Simms, 224 N.J. 393, 396 (2016)

> In State v. Cain, 224 N.J. 410 (2016) we determined that in drug-distribution cases, an expert's opinion on the defendant's state of mind—whether the defendant possessed drugs with the intent to distribute—encroaches on the exclusive domain of the jury as trier of fact. . . .
>
> Expert testimony that a defendant possessed a controlled dangerous substance with the intent to distribute is nothing less than a pronouncement of guilt by mimicking the statutory elements of the offense. Such testimony is not necessary to assist the jury. . . .

> We conclude that the admission of the expert testimony constituted plain error because it violated principles set forth in this Court's recent jurisprudence, including principles on which we further elaborated in Cain.
>
> [(Citation omitted) (decided the same day as Cain.]

Here, we find "plain error," and particularly because the question of whether Green had "intent to distribute" was based solely on circumstantial evidence and not on any observed sale of the marijuana, as the State did not call the confidential informant as a witness.

Compounding the error, the State elicited testimony from the expert that before the expert gives his opinions in distribution cases, he reviews "the State's file and the facts" and would not testify if he determined that the drugs were for personal use. This improper buttressing informed the jury that notwithstanding the hypothetical question, the expert had predetermined the drugs were for distribution, not just possession for personal use; a factual determination that rests solely in the province of the jury.

For the reasons set forth above, we conclude defendant is entitled to a new trial, but we briefly address one other issue raised by defendant. In the State's opening, the jury was told "the Plainfield Police Department . . . came upon information

that led them to believe that <u>there were drugs being sold</u>" (emphasis added) at defendant's residence. Defendant argues this was improper as any such testimony would have been inadmissible under <u>State v. Bankston</u>, 63 <u>N.J.</u> 263, 268-69 (1973). <u>Bankston</u> holds it is a violation of both the hearsay rule and the Sixth Amendment for a police officer to testify what he was told by some other unidentified person concerning a crime being committed. <u>Id.</u> at 268. We find the reference in the State's opening about information received by the police that drugs were being distributed from the premises troubling, as did the trial judge who issued a cautionary instruction advising the jury that opening statements are not evidence. However, in light of our reversal, we need not determine whether this statement constituted error or if any error was adequately cured by the judge's instruction to the jury. Neither do we need to address defendant's arguments as to sentencing. We find the other arguments raised by defendant lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION