**RECORD IMPOUNDED**


NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0945-15T3


R.G.,

     Plaintiff-Respondent,

v.

R.G.,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 14, 2017

APPELLATE DIVISION

Argued January 19, 2017 – Decided March 14, 2017

Before Judges Lihotz, Hoffman and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0318-16.

James A. Abate argued the cause for appellant (James A. Abate, LLC, attorneys; Mr. Abate, of counsel; Randi S. Greenberg, on the brief).

Rebecca A. Berger argued the cause for respondent (Charny, Charny & Karpousis, attorneys; Ms. Berger, of counsel and on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Defendant R.G. appeals from the entry of a final restraining order pursuant to the Prevention of Domestic

Violence Act, N.J.S.A. 2C:25-17 to -35 (the Act). On appeal, defendant argues the Family Part lacked jurisdiction to enter a final restraining order and maintains the altercation with plaintiff was not domestic violence. We reject defendant's jurisdictional challenge, noting he and plaintiff, R.G., who are brothers, fall within the amended jurisdictional provision of N.J.S.A. 2C:25-19(d). However, we agree the facts as presented do not constitute conduct sufficient to support the entry of the order. Additionally, we address evidentiary rulings warranting reversal.

We recount the facts found in the trial testimony provided by plaintiff and defendant, along with documents admitted into evidence during the final hearing.

Defendant and his siblings grew up in New Jersey, but he moved to Long Island, New York, approximately thirty-six years ago. His younger brother, plaintiff, and his sister remained in New Jersey and principally provided care for the parties' elderly parents. As their parents' health began to fail, the bulk of responsibility fell to plaintiff, who was empowered to make decisions for each parent regarding "physical care and treatment or to make decisions to refuse medical care and treatment." Plaintiff also was named the attorney-in-fact to handle his parents' affairs.

In spring 2015, the parties' mother contracted pneumonia. Unfortunately, this led to medical complications. When she was discharged from the hospital, plaintiff commenced steps to place her in a skilled care facility. Defendant and his sister objected to relocating their mother from her home and away from her husband. Soon the parties' sister was convinced their mother and father needed a level of care neither she nor her brothers could provide. Defendant, however, wanted to explore possible alternatives to keep his parents in their own home.

Beginning in May 2015, defendant articulated his opposition to plaintiff's proposal to enroll his mother in a facility and later move his father to the same place. Using text messages sent to his siblings, defendant expressed his repudiation of the decisions and those who made them. Defendant testified he was making arrangements to provide care for his parents when plaintiff sent him an email stating he permanently moved their mother to the proposed facility. Defendant responded with disgust and disappointment because plaintiff failed to consider his plan to provide care for his parents in their home. The charged comments also contain defendant's desire that plaintiff suffer in his old age.

Plaintiff's email sent ten days later included instructions to defendant for visiting his parents. In part, the message was

informational and, in part, condescending. It also contained directives so the parties would avoid seeing each other, apparently because defendant previously texted he did not want to see plaintiff "or else." Defendant's response to plaintiff's email was crude, defensive, and angry.

Also introduced at trial were copies of several text messages sent by defendant to plaintiff and his sister. However, the copies of the messages in the record do not include any prompting texts from plaintiff or plaintiff's replies; we are given only text messages sent by defendant.

Defendant did not deny he sent the text messages, which were admitted into evidence. Their content, in part, contains coarse, gutter language and name calling. Some texts include defendant's demands for financial documents and state his intention to engage lawyers and to inform Medicare and Medicaid about his parents' assets, implying plaintiff and his sister had not been forthright in making disclosures. In a prickly and foulmouthed way, the texts convey defendant's displeasure his mother was taken from her home, she was not encouraged to be mobile but mostly kept in a wheelchair, and his father was not told his wife would never return home. Further, defendant relates his belief his father was left alone, and plaintiff was ignoring defendant's calls and demands.

Plaintiff included one comment he sent, that informed defendant his calls woke their father and rhetorically added, "you need to harass dad also?" In response, defendant wrote:

> I luv to harass u now since u cannot speak like a man
>
> It will get worse and worse
>
> Stand up to your brother like a man and discuss this U r making it worse
> U owe better to ur parents

There are other texts, which have none of these traits. Rather, they convey defendant's desire to provide care for his parents or reflect bitterness because of the decisions plaintiff made.

On September 5, 2015, defendant and his wife travelled to New Jersey to visit his parents, arriving at the facility in the afternoon. Plaintiff took defendant's wife aside to explain his parents' conditions and benefits provided by the facility. Plaintiff testified: "All of a sudden [defendant] comes charging in, getting in my face in a rage." Defendant told his wife plaintiff was "a liar," and she should not "listen to him." Plaintiff's testimony recounted the exchange stating, as he spoke, defendant repeatedly held an open hand like "a slap" right next to plaintiff's face, or held his hand in a fist, as if he were going to hit plaintiff. The argument, where both brothers were yelling, continued in front of the facility's residents and nurses. A nurse instructed them to leave.

Defendant went outside and plaintiff followed. As the argument continued, plaintiff asked defendant if he would hit him in front of their parents or whether he would "do it [hit him] in front of a cop." Defendant "shoved" him. Plaintiff stated defendant shoved him six times, during two of which he was knocked over and his glasses fell off. Police were called and according to plaintiff, defendant was charged with simple assault.

Plaintiff responded affirmatively on direct to a series of leading questions posed by his attorney. He stated "yes," when asked whether he interpreted defendant's texts and conduct as posing a threat, whether the actions made him fear for his safety and well-being, and whether it caused him to fear for the safety and well-being of his family. Finally, he responded "yes" when asked if he believed a restraining order was necessary.

Plaintiff could not relate any history of domestic violence between himself and defendant. He admitted their relationship was good until their mother became ill in May 2015. He then testified, plaintiff's nephew, defendant's son, obtained an order restraining defendant from contact with him and his family, two years earlier. Plaintiff went on to detail this altercation.

A-0945-15T3

Defendant testified. He noted plaintiff's series of text messages and emails omitted information plaintiff sent, which goaded his responses. He explained plaintiff decided he no longer wanted to care for their parents and sought a resolution to aid himself and his wife, by rejecting defendant's alternative plan to allow their parents to stay together in their own home. Defendant stated plaintiff "got extremely pissed-off" because defendant wanted his mother to stay in her home. Defendant mentioned he felt he was "kicked in the teeth," his thoughts were "poo-pooed," and he felt "sandbagged" by plaintiff and his sister, as they did not even consider his proposal for their parents' care. He also objected because plaintiff and his sister were not honest with his parents about what was happening. He made requests of his siblings "two or three times" to do small things that would make his mother's surroundings more comfortable. He believed plaintiff acted for his own benefit, not in his parents' best interests.

Defendant admitted he resented plaintiff's decision to send texts rather than calling to discuss these problems, which defendant felt signaled "a total lack of respect." He admitted he was "very angry" during the September 5, 2015 altercation, but asserted plaintiff was also yelling, showed no fear, and acted to provoke him. Plaintiff would not leave defendant alone

with his parents and even followed him when he walked away. Defendant admitted he shoved plaintiff more than once, but not six times. Defendant also acknowledged a restraining order, which was about to expire, was entered in New York because he slapped his adult son, though he denied injuring his son or smashing his car as plaintiff asserted.

At the conclusion of the testimony, the trial judge entered an oral opinion. He concluded the court had jurisdiction, even though the parties had not resided together for more than thirty years. He also concluded

> defendant engaged in an act of harassment by telling the plaintiff on several occasions the following:
>
> > Calling him a pompous asshole.
> > Calling him a pompous ass wipe.
> > "That's at all [sic] self-righteous asses, you guys thin[k] your shit doesn't stink."

The factual support for finding defendant committed the predicate act of harassment included this cited language from one email sent by defendant to plaintiff:

> What do you think that I am not going to take care of him [their father] while he's with me. Your email sounds like you are lecturing me and telling me how to take care of him. You righteous prick. You and your wife always seem to have a better life chip on your shoulders and that your shit didn't [sic] stink. Your shit smells like mine, you asshole. You are the last one who should be lecturing, you drunk bastard.

A-0945-15T3

> Stop the bullshit.  And your family know [sic] better how to take care of dad.

The judge also recited this language from defendant's texts:

> I will tear our family apart.
>
> . . . .
>
> I will break you financially, morally, physically and mentally.
>
> On July 12[th], "I love to harass you since you cannot speak like a man, stand up to your brother and discuss this.  It'll get worse and worse."
>
> On June 27[th], "I will come down there real soon."
>
> On June 13[th], "This is not done.  I will tear our family apart. Get ready."
>
> And June 12[th], "I feel like coming to you and slapping you silly."

Finally. the judge found the September 5 shoving amounted to a simple assault.

Having concluded plaintiff proved acts of domestic violence occurred, the judge made findings on the second Silver[1] prong, that is, whether there was immediate danger, which he stated was not "self-evident."  The judge relied on the alleged conduct between defendant and his son, as proof of prior domestic violence, and noted defendant's escalating threats, and the

---

[1]    Silver v. Silver, 387 N.J. Super. 112 (App Div. 2006).

parties' "communications culminat[ed] in a physical dispute." Accordingly, the judge concluded plaintiff proved an immediate danger, warranting entry of a final restraining order.

Defendant filed this appeal challenging the final domestic violence restraining order filed on September 17, 2015. He argues, the Family Part lacked jurisdiction to entertain plaintiff's complaint, evidence of the incident involving his son was not relevant and was erroneously considered, and the judge mistakenly found an immediate danger warranting the entry of a final domestic violence restraining order.

> Our review of a Family Part judge's findings following a bench trial is a narrow one. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013), certif. denied, 216 N.J. 587 (2014). In other words, we will neither "'engage in an independent assessment of the evidence as if [we] were the court of first instance,'" N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002) (alteration in original) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)), nor "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, supra, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv[r's] Ins. Co. of Am., 65

> N.J. 474, 484 (1974)). On the other hand, where our review addresses questions of law, a "trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." Z.P.R., supra, 351 N.J. Super. at 434 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).
>
> [N.T.B. v. D.D.B., 442 N.J. Super. 205, 215-216 (App. Div. 2015).]

Defendant's jurisdictional challenge focuses on the parties' relationship, arguing plaintiff does not meet the statutory definition of a "victim of domestic violence." Applying traditional principles of statutory construction, we examine the statute's plain language, which is generally the best indicator of the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). The words used in the Act are given their "ordinary meaning and significance", and we must "read them in context with related provisions so as to give sense to the legislation as a whole." Donelson v. DuPont Chambers Works, 206 N.J. 243, 256 (2011) (quoting DiProspero, supra, 183 N.J. at 492).

Plaintiff's counsel points out the Act was recently amended, and modifications became effective prior to the September 5, 2015 incident. See L. 2015, c. 98 § 2, eff. Aug. 10, 2015. The amendment created a significant change to the definition of a "Victim of Domestic Violence," N.J.S.A. 2C:25-

11                                                    A-0945-15T3

19(d), which we agree resolves the jurisdictional issue presented.

Formerly, the statute defined a victim of domestic violence as "a person . . . who has been subjected to domestic violence by . . . any person who is a present or former household member." N.G. v. G.P., 426 N.J. Super. 398, 409 (App. Div. 2012) (quoting N.J.S.A. 2C:25-19(d) (1994), amended by L. 2015, c. 98 §2, eff. Aug. 10, 2015). Courts struggled to determine the reach of this provision, especially when deciding what relationships fell within the net of "former household members." Ibid. ("In determining whether a defendant is a 'former household member' under the Act, the inquiry should be whether the 'perpetrator's past domestic relationship with the alleged victim provides a special opportunity for abusive and controlling behavior.'") (quoting Tribuzio v. Roder, 356 N.J. Super. 590, 595 (App. Div. 2003) (citations omitted)).

The 2015 amendments clarified the statutory definition to end debate regarding the scope of coverage of "present household member" by redefining a "Victim of domestic violence" to mean

> a person protected under this act and shall
> include any person who is 18 years of age or
> older or who is an emancipated minor and who
> has been subjected to domestic violence by a
> spouse, former spouse, or any other person
> who is a present household member or was at
> any time a household member.

A-0945-15T3

[<u>N.J.S.A.</u> 2C:25-19(d).]

Defendant's attack here refers to the prior version of the statute, making his arguments and prior case law interpretations inapposite.[2] We conclude the statutory amendments express the Legislature's intent to broaden the application of this remedial Act. We are required to construe its provisions liberally. <u>Cesare</u>, <u>supra</u>, 154 <u>N.J.</u> at 400. <u>See also</u> <u>N.J.S.A.</u> 2C:25-18 (reciting the legislature's intent to provide victims the maximum protection from domestic abuse). Consequently, we conclude the Family Part properly exercised jurisdiction over this dispute.

Next, defendant argues testimony regarding the restraining order obtained by his son was not relevant to this dispute, and its introduction interjected inadmissible prejudicial inferences regarding defendant's behavior. Plaintiff argues the testimony was limited, and its admission did not represent an abuse of discretion.

---

[2] In particular, <u>Jutchenko v. Jutchenko</u>, 283 <u>N.J. Super.</u> 17 (App. Div. 1995), which involved adult siblings who had not lived together since childhood. This court rejected the trial court's finding of jurisdiction, reasoning, "we do not believe that the Legislature could have intended the protections of the Act to extend to conduct related to a dispute between two persons who have not resided together in the same household for twenty years . . . ." <u>Id.</u> at 20. The Act's amended jurisdictional provisions cast doubt on the viability of this holding.

A-0945-15T3

We note defendant, who represented himself before the trial judge, did not raise this issue. "Because defendant did not raise this argument below, this issue is reviewed under the 'plain error' standard, which provides reversal is mandated only for errors 'of such a nature as to have been clearly capable of producing an unjust result.'" State v. Green, 447 N.J. Super. 317, 325 (App. Div. 2016) (citing R. 2:10-2).

The Act permits consideration of "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse[.]" N.J.S.A. 2C:25-29(a)(1) (emphasis added). Also admissible is "[t]he existence of a verifiable order of protection from another jurisdiction." N.J.S.A. 2C:25-29(a)(6). However, in this matter, the admission of evidence of purported domestic violence between defendant and a third party other than plaintiff and the trial judge's reliance thereon presents several problems compelling us to reverse.

First, "[e]vidence of a person's character or character trait . . . is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion . . . ." N.J.R.E. 404(a). The rule specifically excludes admission of evidence regarding other wrongs or acts "to prove the disposition of a person in order to show that such

person acted in conformity therewith."  N.J.R.E. 404(b).  The rule allows, however, admission of evidence of other wrongs provided the evidence shows "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute."  Ibid.

When considering the admissibility of evidence of other crimes or wrongs under N.J.R.E. 404(b), courts are instructed to apply the standard adopted by the Supreme Court in State v. Cofield, 127 N.J. 328 (1992), which requires careful analysis of four factors:

> 1.   The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2.   It must be similar in kind and reasonably close in time to the offense charged;
>
> 3.   The evidence of the other crime must be clear and convincing; and
>
> 4.   The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Cofield, supra, 127 N.J. at 338 (citing Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), And 609(a), 38 Emory L.J., 135, 160 (1989)).]

If the trial judge conducts an appropriate analysis under Cofield, this court will not disturb the judge's ruling on the

A-0945-15T3

admissibility of 404(b) evidence, absent a "clear error of judgment."[3] <u>State v. Marrero</u>, 148 <u>N.J.</u> 469, 483 (1997).

Although <u>N.J.S.A.</u> 2C:25-29(a)(1) permits the introduction of evidence of the "previous history of domestic violence," it does not authorize introduction of evidence regarding a defendant's past altercations with others. Rather, <u>N.J.S.A.</u> 2C:25-29(a)(1) and (6), limits the trial court's consideration of evidence to "the previous history of domestic violence between plaintiff and defendant," and the introduction of a "verifiable order of protection from another jurisdiction," respectively. This is "[b]ecause a particular history can greatly affect the context of a domestic violence dispute," thus, "trial courts must weigh the entire relationship between the parties and must specifically set forth their findings of fact in that regard." <u>Cesare</u>, <u>supra</u>, 154 <u>N.J.</u> at 405. Any other evidence presented must meet the test for admission as provided by our Rules of Evidence. See <u>N.J.R.E.</u> 101 to 1103.

Plaintiff's testimony describing an incident between defendant and defendant's son was not permitted by <u>N.J.S.A.</u>

---

[3] Subsequent to issuing its opinion in <u>Cofield</u>, the Court has instructed the second factor of the <u>Cofield</u> analysis, regarding considerations of whether the conduct is "similar in kind and reasonably close in time," is not required in every case implicating a <u>Rule</u> 404(b) dispute. See <u>State v. Williams</u>, 190 <u>N.J.</u> 114, 131-132 (2007).

2C:25-29(a)(1). Nor was it offered to be used for something other than proof of defendant's bad character. Indeed, no Cofield analysis was made by the judge prior to the introduction of the evidence. In fact, the judge made no specific review of the relevance or admissibility of the proffered bad acts evidence.

Second, our careful review of the record reveals no foundation established plaintiff testified based upon his personal knowledge. See N.J.R.E. 602 ("[A] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Plaintiff never stated he was present and witnessed the events between defendant and his son. In fact, he was never asked to provide a foundation for the testimony. In our view, plaintiff was repeating what others told him. Such testimony represents inadmissible hearsay. N.J.R.E. 802 ("Hearsay is not admissible except as provided by these rules or by other law.").

Contrary to plaintiff's assertion, the facts at hand are unlike the statements offered by the plaintiff in Rosiak v. Melvin, 351 N.J. Super. 322 (Ch. Div. 2002). In Rosiak, the defendant told the plaintiff he had assaulted his first wife. This admission provided context for the plaintiff's fear of statements the defendant later made to her, when they ended

their relationship. Id. at 324-25. In this matter, plaintiff's statements amounted to nothing more than what he was told by others, not what he was told by defendant.

We also reject the notion defendant's responsive statements to plaintiff's testimony, admitting he slapped his son and a restraining order was about to expire, are curative. For these reasons, we find no basis for the admission of plaintiff's testimony regarding defendant's alleged history of domestic violence.

Further, when determining the need for a final restraining order, a matter the judge characterized as "not self-evident," the judge specifically relied upon "the prior history." However, there was no prior history between these parties, who, according to plaintiff, enjoyed a "good" relationship prior to their mother's latest illness. The judge did not identify what he meant by "given the prior history." Certainly, the reference encompassed plaintiff's irrelevant and inadmissible hearsay testimony. Although we are aware of the challenges posed when one party in a trial is self-represented, the judge, as gatekeeper, must assure a fair process. See D.N., supra, 429 N.J. Super. at 602.

We conclude the trial judge abused his discretion in permitting the introduction of inadmissible evidence of

defendant's prior bad acts in the form of hearsay. N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 571 (App. Div. 2015). Further, the necessary finding of a need for a final restraining order was not based on admissible, substantial, and credible evidence, Cesare, supra, 154 N.J. at 411-12, but rather upon inadmissible testimony as suggesting a pattern of abuse. We conclude this rises to plain error and are constrained to reverse the order.

Defendant next argues the trial evidence does not support the necessary findings required by Silver to support entry of a final restraining order. Silver, supra, 387 N.J. Super. at 126-27. This court made clear "the commission of any one of the predicate acts enumerated in N.J.S.A. 2C:25-19(a) does not automatically warrant issuance of a domestic violence restraining order." Id. at 124 (citing Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995)). Thus, the trial court must find a predicate offense and also find a basis, upon the history of the parties' relationship, to conclude the safety of the victim is threatened and a restraining order is necessary to prevent further danger to person or property. Id. at 125-26.

Here, the trial judge concluded defendant committed two predicate acts, harassment and simple assault. We consider the evidence supporting these offenses.

A-0945-15T3

"Harassment is the most frequently reported predicate offense among those statutorily recognized in N.J.S.A. 2C:25-19 as a basis for a finding of domestic violence." L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533-34 (App. Div. 2011) (citing J.D. v. M.D.F., 207 N.J. 458, 476 (2011)). The petty disorderly persons offense of harassment requires a person,

> if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

In this matter, we infer the trial judge found defendant violated subsection (c) of N.J.S.A. 2C:33-4, as subsection (a) is generally focused on the mode of speech employed, and not a statement's content. State v. Hoffman, 149 N.J. 564, 583-84 (1997). Examining subsection (c), there is no dispute defendant authored and sent the text messages at issue and almost all content is offensively coarse. The question for determination, however, is whether defendant sent the message with the intent

to harass. N.J.S.A. 2C:33-4. Our review of the record reveals no evidence to support this necessary element, which leads us to reverse. Cesare, supra, 154 N.J. at 412.

The Supreme Court has emphasized the care a trial court must exercise to distinguish between ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence. J.D., supra, 207 N.J. at 475-76. A plaintiff's assertion he or she felt harassed is insufficient to satisfy the statutory element. Id. 484. As the Court held, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

When stating his findings, the trial judge listed some of defendant's text messages and recited excerpts from one of defendant's emails. Relying on these excised statements, he concluded defendant committed harassment. We disagree.

Importantly, defendant did not initiate the email conversations, yet the factual findings fail to mention the content of the precipitating emails from plaintiff. As to the text messages, again the judge's findings do not mention plaintiff's transmissions, leaving us unsure whether the judge reviewed plaintiff's side of the conversation. The record provided on appeal includes only select portions of the

defendant's transmission and almost all of plaintiff's comments are blurred or illegible, except for one or two, which apparently suggest support for his complaint. Thus, we are unable to analyze the entire text conversations to determine whether the context shows defendant was sending harassing communications.

We have no doubt the divergent views regarding placing their parents in a facility was emotional and highly stressful for both parties. We also do not discount defendant's inappropriate expressions of anger and disgust for plaintiff's decision.

Vulgar name-calling alone is not domestic violence. E.M.B. v. R.F.B., 419 N.J. Super. 177, 182-83 (App. Div. 2011). A fundamental element making a communication criminal harassment is the purpose to harass. "'[P]urpose to harass' is critical to the constitutionality of the harassment offense." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div.), certif. denied, 188 N.J. 577 (2006). See also State v. L.C., 283 N.J. Super. 441, 450 (App. Div. 1995) (holding the harassment statute was not enacted to "proscribe mere speech, use of language, or other forms of expression"), certif. denied, 143 N.J. 325 (1996).

Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and

the surrounding circumstances[,]" and "[p]rior conduct and statements may be relevant to and support an inference of purpose." Castagna, supra, 387 N.J. Super. at 606 (citations omitted). See also H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) (the purpose to harass may be inferred from "common sense and experience."). However, "mere awareness that someone might be alarmed or annoyed is insufficient." J.D., supra, 207 N.J. at 487 (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)). That is, a plaintiff's subjective reaction to the conduct, standing alone, is insufficient to establish a defendant acted with improper purpose. Ibid.

The text messages introduced into evidence convey defendant's concern for his parents' needs and feelings about permanently leaving their home. They also express frustration because defendant believed plaintiff was ignoring his phone calls and possibly isolating him from his father. Moreover, they are crude, rude, and vulgar. However, isolating the latter expressions as establishing harassment, without reviewing the surrounding context, including plaintiff's preceding communications, is problematic. See L.M.F., supra, 421 N.J. Super. at 534 ("Our ability to instantaneously and effortlessly send electronic messages has created a gateway unfettered by reflection and open to rash, emotionally driven decisions.").

Even the comments listed in the judge's findings as apparently representing threats (i.e., "I will tear our family apart" and "I will break you financially, morally, physically and mentally") are preceded by defendant's assertion of his intended legal action based on purported misfeasance by plaintiff.

In this matter, the judge made no findings to support a purpose to harass. Other indicia that might circumstantially prove such a purpose, such as plaintiff telling defendant to stop his texts, is also absent. Overall, we conclude the record fails to establish the emails and texts were designed to harass plaintiff.

The Act "is not designed to interdict all forms of unpleasant exchanges between parties." Bresocnik v. Gallegos, 367 N.J. Super. 178, 181 (App. Div. 2004). Further, it "is not a primer for social etiquette and should not be used as a sword to wield against every unpleasant encounter or annoying interaction that occurs between household members . . . ." Ibid. A mere expression of anger between persons in a requisite relationship is not an act of harassment. The court must "[d]raw[] the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of 'ordinary domestic

contretemps.'"  See J.D., supra, 207 N.J. at 475 (quoting Corrente, supra, 281 N.J. Super. at 249-50).

The context of defendant's statements matters.  Excising portions of his statements without weighing the entirety of the comments, as well as whether they are responsive to something sent by plaintiff, leads to an unsupportable result.  We conclude the evidence in the record is insufficient to show defendant acted with a purpose to harass plaintiff.  N.J.S.A. 2C:33-4(c).  The finding of harassment is reversed.

Our conclusion about the legal insufficiency of the record to support harassment must not be misunderstood as sanctioning or excusing defendant's manner of expressing himself.  His anger about being "sandbagged" on issues where he was previously included is palpable.  We cannot overemphasize the impropriety of his expressions on the subject, which we find were juvenile, uncouth, foulmouthed, insulting, and belligerent.  None of these statements have a place in civil discourse, despite the heightened emotionality of the disagreement.

Plaintiff also alleged defendant committed a simple assault.  A simple assault requires the intent to cause bodily injury.  N.J.S.A. 2C:12-1(a)(1).  Here, plaintiff testified defendant repeatedly "shoved" him during the course of their mutual, heated exchange.  Although defendant disagreed on the

extent of the physical contact, he admitted he repeatedly shoved plaintiff and does not deny plaintiff was knocked to the ground. From this evidence, we can infer defendant's conduct was purposeful. Accordingly, the judge's finding defendant committed simple assault, a predicate act under N.J.S.A. 2C:25-19(a), is supported.

Commission of a predicate act is necessary, but alone insufficient, to trigger relief provided by the Act. Silver, supra, 387 N.J. Super. at 126-27 (stating once a plaintiff establishes a predicate act, the court must determine "whether a restraining order is necessary, upon an evaluation of the facts . . . to protect the victim from an immediate danger or to prevent further abuse"). See also J.D., supra, 207 N.J. at 476 ("Merely concluding that plaintiff has described acts that qualify as harassment and omitting this added inquiry opens the door to potential abuse of the important purposes that the Act is designed to serve and threatens to 'trivialize the plight of true victims' in the process." (quoting Corrente, supra, 281 N.J. Super. at 250)). Application of the Act is not automatic or rote. The second prong set forth in Silver requires the conduct must imbued by a desire to abuse or control the victim. Silver, supra, 387 N.J. Super. at 126-27.

> [I]t is clear that the drafters of the law
> did not intend that the commission of any

one of these acts automatically would warrant the issuance of a domestic violence order. The law mandates that acts claimed by a plaintiff to be domestic violence must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse and in light of whether immediate danger to the person or property is present. N.J.S.A. 2C:25-29(a)(1) and (2). This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened. This is the backdrop on which defendant's acts must be evaluated.

[Corrente, supra, 281 N.J. Super. at 248.]

Testimonial evidence showing plaintiff feared his brother consists of his one-word responses to counsel's series of leading questions. His testimony lacks a basis for the response. The record also contains evidence directly refuting this response. For example, during the September 5 incident, the argument was mutual and plaintiff followed defendant outside to continue the argument despite the fact defendant walked away. Finally, the trial judge noted the tension and stress of both parties during this difficult time.

In considering whether "immediate danger" was present, the trial judge found:

In some cases that is self-evident. It's not so the case here. But I do find that, given the prior history, given the

27

escalating threats, the nature of the communications culminating in a physical dispute, that the second prong of <u>Silver</u> is satisfied and there is an immediate danger to this plaintiff warranting the exercise of a final restraining order.

We have identified the erroneous evidentiary rulings of a "prior history" and we have rejected defendant's text messages evince criminal harassment. After tearing away such factual support, the conclusion a final restraining order was necessary to protect plaintiff crumbles.

While we find defendant's manner of expressing himself unacceptable and repugnant, after considering the entire record, we cannot conclude the parties' interaction on September 5 implicates the public policy concerns identified by the Legislature, underpinning the need for a domestic violence restraining order.

> The ultimate issue is whether, in light of these factors, the victim was, at the time of the precipitating event, subjected to potential abusive and controlling behavior related to and arising out of the past domestic relationship. If so, the victim is in need of and entitled to the special protection provided by the Act.
>
> [<u>Tribuzio</u>, <u>supra</u>, 356 <u>N.J. Super.</u> at 597.]

The critical fact absent from the required analysis is a sufficient nexus between the predicate conduct, in this case the September 5, 2015 shoving, and the domestic relationship between

A-0945-15T3

the parties. The offense must be tainted by a desire to abuse or control the victim because of their domestic relationship. Here, defendant's actions during this incident do not show a "pattern of abusive and controlling behavior" of the kind intended to be prevented by the Act. Peranio v. Peranio, 280 N.J. Super. 47, 52 (App. Div. 1995); see also Cesare, supra, 154 N.J. at 397; N.G., supra, 426 N.J. Super. at 409. Accordingly, we conclude the evidence is inadequate to support a finding defendant's conduct constituted domestic abuse. See N.T.B., supra, 442 N.J. Super. at 215-16 (holding not every dispute or disturbance between family members is sufficient to warrant the Act's application).

In summary, defendant, by virtue of his familial relationship with plaintiff, falls within the newly modified jurisdictional scope of the Act. However, for the reasons stated, the conflict set forth in this record is not tantamount to domestic violence for which a final restraining order should be entered. Finally, our review does not lead to the conclusion the evidence supported a separate finding a final restraining order was necessary for plaintiff's immediate protection or to prevent further abuse. See J.D., supra, 207 N.J. at 488.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0945-15T3