# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0073-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

DAVID L. MORRIS,

    Defendant-Appellant/
    Cross-Respondent.

_____

Submitted March 19, 2019 – Decided September 16, 2019

Before Judges Suter and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 08-12-0482.

Joseph E. Krakora, Public Defender, attorney for appellant/cross-respondent (Michael James Confusione, Designated Counsel; Alison Stanton Perrone, on the brief).

Richard T. Burke, Warren County Prosecutor, attorney for respondent/cross-appellant (Kelly A. Shelton, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant David Morris appeals his August 30, 2016 judgment of conviction. He claims the trial court improperly instructed the jury on the counts of the indictment that charged him with endangering the welfare of a child and child cruelty. He also contends the trial court erred by denying his motion for judgment of acquittal because the State did not prove these charges beyond a reasonable doubt. We affirm the judgment of conviction.

I

Defendant has five children. During the timeframes pleaded in the indictment, they all were minors. The children resided with defendant and his spouse, Ralphie Nelson-Morris (Nelson).[1] Three of his children,[2] Sara age sixteen, Cindy, age twelve, and Kate, age nine, were from a prior relationship with Cynthia Brown. He has two children, Luke, age ten, and Nancy, age five, with Nelson. Nelson's niece, Ann, age nine, also lived with them.

---

[1] She was a co-defendant in the same indictment.

[2] The names of the children are all fictitious to protect their confidentiality. See R. 1:38-3(c) (9).

A-0073-16T1

In 2016, defendant was convicted by a jury of three counts of endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts nineteen, twenty-two and thirty-four), three counts of child cruelty, N.J.S.A. 9:6-3 (counts eighteen, twenty-one and thirty-three) and six other counts that he has not challenged on appeal.[3] Following the denial of his motion for a judgment of acquittal,[4] defendant was sentenced in August 2016 to an aggregate six-year term of incarceration.[5] Defendant's brief addresses his convictions under the endangering and child cruelty counts only.

_____

[3] These include: third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count thirteen); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count fourteen); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count fifteen); disorderly persons simple assault (count sixteen); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (counts seventeen and twenty).

[4] In denying defendant's motion for judgment of acquittal, the trial court stated it had read the parties' papers, "sat through the trial . . . listened to the testimony, [and] reviewed all the evidence." The court was "satisfied that there was evidence to support the jury verdict."

[5] He was sentenced on count nineteen to a six-year term of incarceration. Counts fifteen, eighteen, twenty-one and thirty-three were merged into that count. He was sentenced on count twenty-two to six years to be served concurrently. On count thirty-four, he received a five-year sentence, also to be served concurrently. Defendant was sentenced to three-year terms on counts thirteen, fourteen, seventeen and twenty, also to be served concurrently. He was fined $100 for simple assault on count sixteen.

A-0073-16T1

Defendant's convictions involve the physical (non-sexual) abuse of Sara and Kate. Kate and Sara testified at trial that defendant would punish them by striking them with a belt or other objects—often while they were dressed just in their underwear—and that he would make the other children watch.

In November 2005, Kate complained at school that defendant slapped Sara in the back of head, punched her in the side and struck her with a belt. The Division of Youth and Family Services (DYFS)[6] was contacted, but Sara said she was not punched in the side and was not afraid to go home. The caseworker recommended family counseling.

On Mother's Day in 2007, defendant locked the children out of the house all day without food, water or use of the bathroom, according to Kate and Sara, because defendant told them they were "ungrateful bitches" toward Nelson. Later that evening, defendant had them strip to their underwear and repeatedly hit them with a belt. After Kate complained at school, DYFS was contacted. When defendant found out that Kate instigated DYFS's involvement, he again hit her with a belt. Although testimony by the other children about the Mother's Day incident varied somewhat, defendant acknowledged he locked the children

---

[6] DYFS now is the Division of Child Protection and Permanency.

A-0073-16T1

out of the house for being ungrateful, although he claimed it was for less time and that they could use the bathroom.

The children testified defendant hit them with a belt for discipline. Ann, Luke and Kate missed the bus one day and walked across a busy road. Defendant hit them with a belt as punishment. He hit Cindy with a belt when she received a bad grade. Sara sent emails to a young man who was seven years older than her, including one with a photo where she was partly dressed, and continued to contact him through the internet over her father's objection. Defendant hit her with a belt buckle and threaten to cut off her fingers and ears about the relationship. This was the same day she saw defendant hit Luke with the butt of a shotgun or rifle because he had gotten suspended from school.

On June 14, 2008, defendant forcibly held down Sara and shaved off her eyebrows. He blamed Sara for setting a bad example for the younger child, Nancy, who by imitating her older sister, used scissors to try to shape her own eyebrows. Kate and Ann confirmed that defendant shaved off Sara's eyebrows. When Sara told defendant she wanted to move out to live with her mother, defendant grabbed her by the neck, picked her up off the ground, hit her with the side of a machete, which inflicted a small cut above her eye, and then kicked and punched her in the face, stomach and back. He threatened that he could

5

shoot her in the head or mutilate her body. Sara complained about this at school, which resulted in DYFS removing all the children on an emergency basis. An officer testifying at trial confirmed Sara's injuries included shaved eyebrows, bruises on her left bicep and a small cut at her left ear.

Nelson's testimony also confirmed some of the incidents. She testified defendant shaved off a part of Sara's eyebrows, and also had hit Sara with a belt over the photographs she emailed to her male friend. He hit Kate with a belt when she hit another child with a rock, and he hit the children with a belt when they missed the bus.

Defendant testified he disciplined the children in various ways, but only used the belt in extreme situations. For instance, he objected to Sara's relationship with the older boy. When the children missed the bus, they walked across a dangerous highway. The children did not show they were grateful to Nelson, their stepmother, and he admitted locking them out of the house, but it was for a shorter period and they were able to use the bathroom. He admitted shaving part of Sara's eyebrows because she set a bad example for the other girls.

On appeal, defendant raises these issues:

A-0073-16T1

POINT ONE

DEFENDANT'S CONVICTIONS FOR ENDANGERING THE WELFARE OF A CHILD (COUNTS NINETEEN, TWENTY-TWO AND THIRTY-FOUR) AND CHILD CRUELTY (COUNTS EIGHTEEN, TWENTY-ONE AND THIRTY-THREE) MUST BE REVERSED BECAUSE THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE CIRCUMSTANCES IN WHICH CORPORAL PUNISHMENT CAN CONSTITUTE ABUSE AS DEFINED BY N.J.S.A. 9:6 -1.

POINT TWO

DEFENDANT'S CONVICTIONS MUST BE VACATED BECAUSE THE STATE FAILED TO PROVE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT.

II

A

Because there was no objection made to the jury charge at trial, we review this issue under a plain error standard, meaning our inquiry is to determine whether this was an error that was "clearly capable of producing an unjust result." R. 2:10-2; see State v. Macon, 57 N.J. 325, 336 (1971). Under that standard, reversal of defendant's conviction is required if there was error "sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." State v. Green, 447 N.J. Super. 317, 325

7

(App. Div. 2016) (quoting Macon, 57 N.J. at 336).  Correct and adequate jury instructions are "essential for a fair trial."  State v. Martin, 119 N.J. 2, 15 (1990).  Defendant has not shown that the instruction on child endangerment and child cruelty was capable of raising "reasonable doubt" and leading "to a result it otherwise might not have reached."  Macon, 57 N.J. at 336.

Defendant argues the instruction did not clarify that it is legal in New Jersey for a parent to use corporal punishment and only excessive or unnecessarily severe corporal punishment is illegal.  He notes the jury instruction did not mention "excessive" corporal punishment nor define what the term "unnecessarily severe" meant.  He also claims that use of the word "unreasonable" in this instruction "gave the jury the opportunity to convict [him] based on its own concept of what is reasonable or unreasonable."

The court included the word "unreasonable" in the jury instruction for child cruelty at the suggestion of defendant's attorney.  Counsel argued that if the word were removed, this would not provide "the justice that my client deserves."  Counsel suggested "unreasonableness" was an "element" that had to be communicated to the jury and then suggested this language: "In assessing whether corporal punishment is either unreasonable or unnecessarily severe, you

should consider both the age of the child and the behavior that the parent is trying to correct."

The instruction that was read to the jury on child cruelty (counts eighteen, twenty-one and thirty-three) incorporated the definition of "cruelty to a child" in N.J.S.A. 9:6-1, and added the language suggested by the defense:

> Cruelty to a child shall consist of any of the following acts:
>
> (a) Inflicting unnecessarily severe corporal punishment upon a child. In assessing whether corporal punishment is either unreasonable or unnecessarily severe, you should consider both the age of the child and the behavior that the parent is trying to correct;
>
> (b) Inflicting upon the child unnecessary suffering or pain, either mental or physical;
>
> (c) Any willful act, whereby unnecessary pain and suffering, whether mental or physical is caused to be inflicted on a child.

The court's instruction about the crime of endangering the welfare of a child (counts nineteen, twenty-two and thirty-four), included the statutory language. Under N.J.S.A. 2C:24-4(a)(2), a person with a legal duty to care for a child is guilty of endangering the welfare of that child if he or she causes the child "harm that would make [him or her] an abused or neglected child as

9

defined in" N.J.S.A. 9:6-1, N.J.S.A. 9:6-3, and N.J.S.A. 9:6-8.21.[7]  The court

again read to the jury the instruction on child cruelty that included the additional

language defendant's attorney had suggested.

During deliberations, the jury asked: "Is 'spanking' illegal in New Jersey

at all levels?  In other words, are all levels and types of spanking illegal in New

Jersey?  Is some degree of spanking of a child legally allowed in New Jersey?"

The parties agreed the answers to the first two questions were "no."  On

the third question, defendant's attorney suggested the court tell the jury that "[i]f

the purpose [of the spanking] was corporal punishment, then [it] must determine

if it was unreasonable and unnecessarily severe."  The trial court accepted this

language.  The court's answers to the jury's questions were as follows:

> Well, there's three questions.  So spanking in New
> Jersey at all levels is not illegal.  Some forms of
> spanking are acceptable.  All forms of spanking are not
> illegal.  It depends on the purpose of the spanking, the
> circumstances, and the severity.  If it is for the purpose
> of corporal punishment, it is legal, unless it is
> unnecessarily severe.  You should consider both the age
> of the child and the behavior that the parent is trying to
> correct to determine if the corporal punishment is
> unreasonable or unnecessarily severe.  If the purpose of
> the spanking was not corporal punishment, you should
> consider whether the spanking inflicted unnecessary

---

[7]  The court did not expressly reference these statutory citations.

pain or suffering, either mental or physical, upon the child.[8]

We disagree with defendant that the court's instruction to the jury on child cruelty and endangering the welfare of a child constituted plain error. The initial instruction about child cruelty made clear the State had to prove beyond a reasonable doubt, that defendant committed "unnecessarily severe corporal punishment" in order to be convicted. At the defendant's request, it included

---

[8] A colloquy then ensued with the court:

> Juror: So the . . . first part of the answer is if the punishment is corporal punishment for a particular corrective reason, it's only if that is not the case that then the consideration of—well, the severity considerations with that first one, as well.
>
> Court: It depends on the purpose of the spanking, the circumstances, and the severity.
>
> Juror: But then the second part, where it's not corporal punishment of a possibly reasonable or unreasonable level for purposes of correcting a behavior, after that comes the last part where you also are considering harm.
>
> Court: If the purpose of the spanking is not corporal punishment, you should consider whether the spanking inflicted unnecessary pain or suffering.
>
> Juror: Okay.

A-0073-16T1

factors for the jury to consider in making the determination whether the corporal punishment was unreasonable or unnecessarily severe including the child's age and the behavior the parent was trying to correct.

N.J.S.A. 9:6-8.21 prohibits "unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment." Defendant complains the word "excessive" should have been included in the charge. Defendant did not raise this at the charge conference. Importantly, he did not explain how the term "excessive" is different from "unnecessarily severe." Certainly, what is excessive is unnecessarily severe and vice-versa. The instruction did not constitute plain error because it used the phrase "unnecessarily severe" and not "excessive."

Defendant objects to using the term "unreasonable" even though his counsel suggested it. This was not plain error given the statute's reference to "unreasonably inflicted harm" as abuse or neglect. See N.J.S.A. 9:6-8.21 (providing that a child can be considered to be abused or neglected "by unreasonably inflicting . . . harm . . . including the infliction of excessive corporal punishment).

We also disagree with defendant's argument that the words "unnecessarily severe," used in the jury charge and in the statutory definition of child cruelty,

A-0073-16T1

needed to be further defined for the jury. The phrase adequately implied only corporal punishment that arose to that level was impermissible. In considering whether the corporal punishment was "unnecessarily severe," the court instructed, at the defendant's request, that the jury consider the age of the child and the behavior the parent was trying to correct. There was "nothing extraordinary in calling upon a jury to decide a case based on concepts that employ terms such as 'substantial,' 'serious,' or 'reasonable.'" State v. T.C., 347 N.J. Super. 219, 241 (App. Div. 2002).

We reject defendant's argument that the jurors were not instructed about the legality of corporal punishment in New Jersey. They were told corporal punishment was not illegal in New Jersey in answer to their question about spanking. Looking at these charges as a whole, we are fully satisfied they were not "clearly capable of producing an unjust result."

B

A trial court is to enter an order for a judgment of acquittal only "if the evidence is insufficient to warrant a conviction." R. 3:18-1.

> [T]he question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably

13

could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

[State v. Reyes, 50 N.J. 454, 458-59 (1967).]

We apply the same standard on appeal. State v. Kittrell, 145 N.J. 112, 130 (1996). Under Rule 3:18-1, we "confine our analysis of the adequacy of the evidence to the State's case and the inferences to be derived therefrom." State v. Samuels, 189 N.J. 236, 245 (2007). "If the evidence satisfied that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).

A jury is "free to believe or disbelieve a witness's testimony." State v. Saunders, 302 N.J. Super. 509, 524 (App. Div. 1997). A motion for acquittal may be denied even where a defendant's proofs contradict those of the State; such contentions do not necessarily "warrant the removal of the case from the consideration of the jury." State v. Graziani, 60 N.J. Super. 1, 15-16 (App. Div. 1959).

Defendant claims the State did not prove he committed excessive or unnecessarily severe corporal punishment against Sara and Kate by hitting them. He argues there was no evidence "lasting harm" was inflicted, and the punishments were reasonable to discipline Sara for her "wayward" behavior and Kate for having "lied" to DYFS.

Our review of the record shows there was ample testimony to support the trial court's decision to deny defendant's motion for judgment of acquittal. There was testimony at trial from the children and a DYFS caseworker that in May 2007, defendant locked the children out of the house all day because they had not wished Nelson a happy Mother's Day. Defendant hit the children with a leather belt for discipline, and sometimes with the buckle, and left marks. He shaved off Sara's eyebrows and then hit and kicked her. Sometimes he hit the children with other objects. The statute did not require that the harm be lasting in nature. Giving the State the benefit of all favorable testimony, as we must for the motion for judgment of acquittal, we conclude the trial court properly denied the motion.

C

While the State filed a cross-appeal contending the trial court made erroneous evidentiary rulings, we have no occasion to address these arguments because the trial court did not err in instructing the jury or by rejecting defendant's motion for judgment of acquittal. The issues raised on cross-appeal are moot because their resolution will have no effect on the outcome of the case nor will they resolve any "underlying issue . . . of substantial importance, likely to reoccur but capable of evading review." Betancourt v. Trinitas Hosp., 415

15

N.J. Super. 301, 311-12 (App. Div. 2010) (quoting <u>Zirger v. Gen. Accident Ins.</u> <u>Co.</u>, 144 N.J. 327, 330 (1996)).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0073-16T1