# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0898-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DYLIN D. NICKENS,

    Defendant-Appellant.

_____

Submitted December 4, 2018 – Decided October 4, 2019

Before Judges Suter and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 16-12-3484.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Patrick D. Isbill, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Dylin D. Nickens appeals his conviction and sentence arising from his participation as an accomplice in a sexual assault. He contends the prosecutor's summation improperly shifted the burden of proof to him and commented on his right to remain silent. He argues the court's instruction to the jury on "consent" also shifted the burden of proof to him, and that the witness tampering instruction allowed for a non-unanimous verdict. Defendant requests resentencing because of the trial court's analysis of the aggravating and mitigating factors. We affirm defendant's convictions and sentence.

Defendant was indicted in 2016 for second-degree sexual assault as an accomplice, N.J.S.A. 2C:14-2(c)(1), N.J.S.A 2C:2-6; conspiracy to commit sexual assault, N.J.S.A. 2C:14-2(c)(1), N.J.S.A. 2C:5-2; third-degree burglary, N.J.S.A. 2C:18-2(a)(1); and third-degree witness tampering, N.J.S.A. 2C:28-5(a). Following the denial of his motion to suppress the statement he gave to the police, he was convicted by a jury in June 2017 on all counts. He was sentenced on the sexual assault charge to an eight-year term subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He received four-year sentences on the burglary and witness tampering counts. The burglary sentence was concurrent to the sexual assault count. The witness tampering sentence was consecutive to the

assault count, resulting in an aggregate term of twelve years with a 6.8 year period of parole ineligibility.

## I.

Mary[1] first met defendant on a dating website called "Plenty of Fish," and the two exchanged phone numbers. They met at defendant's apartment in mid-September 2016 for sex. Defendant's twin brother, Devin, was sitting outside when Mary arrived and he said hello to her. Mary and defendant had sex that night before she left on a trip.

She received text messages from both defendant and Devin while she was away. She texted to Devin that she was not interested in him and would not "go from one brother to the next." In response to Devin's entreaties to "hang out," she responded that she could not "chill with [him]" because she "had sex with [his] brother." She texted him that they could not be friends and then did not respond to his further messages.

Mary made plans to meet defendant when she returned from Florida. Mary did not want Devin to be present. It had been "a little awkward" seeing Devin the first time and she was told he did not live there. Defendant told Mary that Devin was in Atlantic City.

---

[1] A pseudonym is used to protect the privacy of the victim. R. 1:38-3(c)(12).

A-0898-17T4

On September 20, 2016, Mary arrived at defendant's apartment around 10:00 to 11:00 p.m. She parked her car, put her purse in the trunk, locked it and took her keys and phone with her. It was dark inside the apartment, but the television was on. Defendant told her to put her phone and car keys on the kitchen table because the bedside window sill was wet. She did not see anyone else there.

Mary testified that defendant did not remember at first that he had told her his brother had gone to Atlantic City. When she asked why he did not go there too, defendant said he had "work and stuff." Defendant would not let Mary use the bathroom, saying it was "messy." He turned on music, went into the bathroom to clean it and closed the door. After he came out, she "heard something drop" in the bathroom. Threatening to leave, defendant let Mary look in the bathroom, but no one was there.

Defendant and Mary had oral sex in the bedroom. He kept the music playing at its "highest maximum volume." Defendant told Mary that his "mouth was dry" and went to the kitchen "to get something to drink." They recommenced having oral sex. Mary testified that defendant "just popped up and walked into the bathroom" for a few seconds and came back. Mary was not aware that it was Devin—not defendant—who had walked out of the bathroom

and started having oral sex with her.  It was not until he "got up and laid on the bed and tried to cover himself with the pillow," that she saw "the extra tattoos and noticed the different haircut[]" and realized it was Devin, not defendant.

She promptly dressed and grabbed her phone from the kitchen, but her car keys were missing.  She went outside and saw defendant "coming out of [her] car."  The door was open, the lights were on and her purse was on the passenger seat.  Defendant was trying to "duck behind the car so [Mary] wouldn't see him."

She confronted defendant and called 9-1-1, because she believed they had robbed her.  She did not mention the sexual assault because she was "scared" and it was "embarrassing."  Her focus was on "[her] car not being stolen or anything in [her] car being stolen."  The police came to the scene.  Mary did not want to press charges.

Shortly after she left, defendant texted her on the "Plenty of Fish" website.  He denied trying to rob her stating "[a]ll we did was switch on you to get some pussy.  I'm being honest."  She responded that he should leave her alone.

When the police called Mary the next day, she gave them a full account of the incident in a taped statement and copies of the messages between her and defendant.  She identified defendant and Devin in photographs.  She did not file charges against the brothers.

A-0898-17T4

Defendant called Mary a few days later. He asked her to drop the charges because "[his] brother [was] locked up" but she told him, "[she] never pressed charges." Mary hung up. She received additional messages from defendant telling her that she "should [have] never sent the cop the screen shot of the conversation. It wasn't none of his business." In another, he stated "I'm going to prison because of you . . . . [Y]ou're the one who called the cops. Nobody else. It's your f--king fault . . . we dealing with this and that he locked up." She reported all this to the police.

On appeal, defendant raises these issues:

POINT I

THE PROSECUTOR'S SUMMATION INAPPROPRIATELY SHIFTED THE BURDEN OF PROOF AND COMMENTED ON DEFENDANT'S SILENCE. THIS IMPROPER ARGUMENT NECESSITATES REVERSAL OF DEFENDANT'S CONVICTIONS. (NOT RAISED BELOW)

POINT II

THE JURY INSTRUCTION ON THE ISSUE OF CONSENT—THE ONLY CONTESTED ISSUE IN THE CASE—UNCONSTITUTIONALLY SHIFTED THE BURDEN OF PROOF TO DEFENDANT TO SHOW CONSENT. (NOT RAISED BELOW)

A-0898-17T4

POINT III

THE JURY INSTRUCTION ON WITNESS TAMPERING PERMITTED THE JURY TO RETURN A NON-UNANIMOUS VERDICT. THEREFORE, DEFENDANT'S CONVICTION FOR WITNESS TAMPERING MUST BE VACATED. (NOT RAISED BELOW)

POINT IV

THE TRIAL COURT ERRONEOUSLY FOUND SEVERAL AGGRAVATING FACTORS THAT HAD NO BASIS IN THE RECORD AND DISMISSED WITHOUT CONSIDERATION MITIGATING FACTORS THAT WERE BASED IN THE RECORD. THEREFORE, THE SENTENCE MUST BE VACATED AND THE CASE REMANDED FOR RESENTENCING.

II.

A.

Defendant argues the prosecutor's summation violated his constitutional rights by shifting the burden of proof and by commenting on his right to silence. He contends the prosecutor should not have commented to the jury about what defendant did not say to the police during his statement to them.

Following defendant's arrest, he waived his Miranda[2] rights and gave a taped statement to the police where he said he did not know Mary. He asserted

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0898-17T4

that someone he knew as "Crystal" had come over to his apartment on the night of September 20, 2016. Defendant denied having a user name on the "Plenty of Fish" website and he denied texting Mary. His interview with the police ended when he indicated he did not want it to continue.

Prior to trial, defendant moved to suppress his oral statement, but the motion was denied. His entire statement was played to the jury, including the end when he told the police he just wanted to "cut the interview."

The prosecutor's summation to the jury commented on the inconsistency between defendant's statement to the police, that he did not know Mary, and his defense at trial that Mary consented to having sex with defendant and his brother. The prosecutor argued:

> [T]he defendant didn't say in his videotaped statement that Devin was there to have consensual sex with [Mary]. Right? You saw and heard the defendant's videotaped statement. What did he say in his videotaped statement? He said he didn't even know who [Mary] was, let alone have a relationship with her. He didn't even know who she was, so . . . how could his position be that she was having consensual sex with him . . . when he can't even admit he knew who [Mary] was? Let alone that she was there to have sex with both of them.
>
> If [Mary] was there to have sex with both of them, wouldn't the defendant have just said that in his taped statement? He didn't say that. What he said in his statement was something totally different. Was that I

8

don't even know her….I didn't do anything with her. I didn't have any type of a relationship with her. He didn't say that she was there to have consensual sex with both of them.

Later in the summation, the prosecutor argued:

So what generally does the defendant say in his videotaped statement? Basically . . . he never says . . . [Mary] was here to have sex with me. I had consensual sex with her and she also had consensual sex with Devin. He does not say that.

What he says is I don't know [Mary]. Didn't have a relationship with her and don't even know her. I was talking to some girl named Crystal. Yeah. That text that Detective Lyons showed me, yeah. That text exchange on September 20th. Yeah, that was me, but I wasn't talking to anybody named [Mary] . . . .

He's not saying how the hell am I being charged with sexual assault? I'm totally innocent of that. There's no way that I could be guilty of a sexual assault. I've never had sex with somebody without their consent. I didn't help anybody else to have sex with somebody else without their consent. He's not saying that.

Defendant's attorney did not object to the prosecutor's summation. Because there was no objection, we review this issue under a plain error standard, meaning our inquiry is to determine whether this was an error that was "clearly capable of producing an unjust result." R. 2:10-2; see State v. Macon, 57 N.J. 325, 336 (1971). Under that standard, reversal of defendant's conviction is required if there was error "sufficient to raise a reasonable doubt as to whether

[it] led the jury to a result it otherwise might not have reached." State v. Green, 447 N.J. Super. 317, 325 (App. Div. 2016) (quoting Macon, 57 N.J. at 336). Reversal is not warranted where the alleged error is "harmless." State v. J.R., 227 N.J. 393, 417 (2017).

Defendant relies on State v. Muhammad, 182 N.J. 551 (2005) to support his argument that the prosecutor's comments in summation violated his right to remain silent. In Muhammad, the defendant told the police that the victim had been harassing his family members. Id. at 560. When she contradicted this, insisting he had forced her to have sex with him, the police sergeant told the defendant he could not leave because they would need to conduct an investigation. Id. at 560-61. At that point, the defendant did not say anything further to the police.

During the trial, defendant's attorney suggested the victim was "a prostitute with whom defendant had a consensual sexual encounter." Id. at 562. The prosecutor commented throughout the trial that the defendant had not told this story to the police when he was at the station. Id. at 562-64.

The Court found that the prosecutor's comments were "direct references to defendant's silence." Id. at 565. "Making reference at trial to what a defendant did not say to the police is commenting on his silence." Ibid. The

Court found the State violated the defendant's state law right against self-incrimination because the prosecutor had not just pointed out inconsistencies; the prosecutor "called for the jury to reject the consent defense because defendant remained silent when he had the opportunity to present it to the police." Id. at 566.

Here, defendant argues that because the prosecutor pointed out in summation what defendant did not say to the police during his statement to them, that this violated Muhammad by commenting on defendant's right to silence. We do not agree that Muhammad is violated in this case.

In State v. Tucker, 190 N.J. 183, 190 (2007), the defendant gave more than one post-Miranda statement to the police. At trial, the prosecutor elicited discrepancies between the statements. The Court held "[a] defendant's right to remain silent is not violated when the State cross-examines a defendant on the differences between a post-Miranda statement and testimony at trial." Id. at 189. The Court observed that the defendant who agreed "to give a statement, . . . has not remained silent, but has spoken." Id. at 189. It concluded that "the State's pointing out of inconsistencies in defendant's statements and other evidence at trial did not constitute an unconstitutional comment on silence." Id. at 190.

 A-0898-17T4

The decision in State v. Kucinski, 227 N.J. 603 (2017) reaffirmed this. In that case, the Court found defendant waived his right to remain silent and then gave a statement, even though he had refused to answer certain questions during the interview. Id. at 623. Because the Court found the defendant waived his right to remain silent, "cross-examination [of the defendant] regarding facts to which he testified at trial, but omitted in his statement to the police, was proper." Ibid.

Here, defendant did not testify at trial, but he gave a statement to the police, post-Miranda, where he said he did not know Mary or text her. He insisted another woman named Crystal was at his apartment. Defendant eventually did stop the interview, but the prosecutor was not precluded from pointing out inconsistencies between defendant's defense theory at trial (consent by Mary) and his statement to the police (he did not know or text Mary). This was not a comment on defendant's silence after he stopped the interview; it was about the inconsistencies in defendant's explanations. Defense counsel's "failure to object suggest[ed] that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Frost, 158 N.J. 76, 84 (1999).

Considered in the context of the State's overall proofs, the prosecutor's summation did not constitute plain error. The State's proofs included text

messages between Mary, defendant and defendant's brother. She made clear in her text to defendant's brother that she was not interested in him. There was a text message between the defendant and Mary after the incident in which defendant admitted making the switch. There were texts and phone calls by defendant attempting to persuade Mary not to testify. That Mary saw defendant in her car and her purse was no longer locked in the truck, lent credibility to her version of events.

The State's summation did not shift the burden of proof to defendant. The prosecutor continually reminded the jury that the State had the burden of proof on all the charges. The court's instructions to the jury were clear as well, that the State, alone, had the burden of proof in the trial.

There was no objection by defense counsel when defendant's complete statement to the police was played to the jury, including the part where the interview was stopped. The jury heard:

| Det. Lyons: | Do you remember the girl that was there? |
| [Defendant]: | I'm saying I would like to cut the interview time. I want to just cut it. |
| Det. Lyons: | You don't want to talk to me anymore? |
| [Defendant]: | Yeah, (indiscernible). |

Det. Lyons: (Indiscernible).

[Defendant]: Un-huh.

In State v. Feaster, 156 N.J. 1, 73-77 (1998), the Court considered whether a jury should be permitted to hear the defendant invoke his right to silence. The Court stated that there were circumstances where such "testimony is essential to the complete presentation of the witness's testimony and its omission would be likely to mislead or confuse the jury." Id. at 76. In that situation, the court must give a cautionary instruction. Ibid. Generally, however, the Court noted "trial courts should endeavor to excise any reference to a criminal defendant's right to invoke his right to counsel." Id. at 75.

Here, although there was no cautionary instruction, we do not find there was plain error. The exchange by defendant that terminated the interview was very brief, the prosecutor did not comment on it during summation, defendant's attorney never objected and the court instructed the jury that defendant had the right to not testify at trial.

## B.

Defendant argues the court's jury instruction on sexual assault and consent improperly placed the burden on him of proving he did not reasonably believe, or could not have reasonably believed, that Mary consented. He contends the

A-0898-17T4

instruction focused on whether defendant reasonably believed that Mary consented.

We conclude the jury charge was clear in instructing the State had the burden of proof on every element. The judge instructed the State had to prove beyond a reasonable doubt that a sexual assault occurred, and listed the required elements: that the brother committed an act of sexual penetration, acted knowingly, used physical force or coercion and the victim did not sustain severe personal injury. The trial court was clear that the State had to prove defendant's brother used physical force or coercion, and instructed the jury it had to decide "whether [the brother's] alleged act of penetration was undertaken in circumstances that led [the brother] reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration." The court instructed that if there were "evidence to suggest that the defendant reasonably believed that such permission had been given, the State must demonstrate beyond a reasonable doubt either that the defendant did not actually believe that such permission had been freely given, or that such a belief was unreasonable under all the circumstances."

A fair reading of this instruction was that the State had the burden on every element and did not require defendant to prove consent. This instruction did not

A-0898-17T4

rise to the level of plain error. It was entirely consistent with the Court's guidance in <u>State In the Interest of M.T.S.</u>, 129 N.J. 422, 449 (1992), that the State bears the burden of proving beyond a reasonable doubt "that a reasonable person would not have believed that there was affirmative and freely given permission." The trial court's jury instruction quoted nearly verbatim from <u>M.T.S.</u>

C.

Defendant argues the court's jury instruction on witness tampering allowed for his conviction on this charge without jury unanimity. We review this issue under a plain error standard because it was not raised at the trial. <u>R.</u> 2:10-2.

The court instructed the jury on witness tampering. First, the State had to prove that defendant believed an "official proceeding or investigation was pending" or about to be instituted. Next, the State had to prove that defendant "knowingly" engaged in conduct that a "reasonable person" would believe would cause a witness to: testify falsely, withhold testimony or information, or not testify or absent himself from the investigation, or "[o]therwise obstruct, delay, prevent or impede an official proceeding or investigation." <u>See</u> N.J.S.A. 2C:28-5(a) (providing the elements of "tampering").

The State presented evidence that defendant knew there was an investigation and then acted to try to influence Mary to withhold testimony or obstruct the investigation. There was evidence that after Mary met with the police, she received a phone call from defendant asking her to drop the charges because defendant's brother had been arrested. Other messages from defendant reproached Mary for giving the police evidence of defendant's text messages and blamed her for his legal situation. These messages showed awareness of an investigation and an attempt to influence Mary not to cooperate with the police.

The court's instruction did not present different legal theories about defendant's responsibility for witness tampering. Defendant's acts were not "contradictory or only marginally related to each other." State v. Cagno, 211 N.J. 488, 517 (2012) (quoting State v. Parker, 124 N.J. 628, 639 (1991)). They all arose from defendant's attempt to convince Mary not to cooperate with the prosecution. Also, there was no "tangible indication of jury confusion." Ibid. (quoting Parker, 211 N.J. at 639). Thus, there was no requirement in this case for a specific unanimity charge on witness tampering.

D.

Defendant contends his sentence was excessive and requests a remand for resentencing. He claims the trial court placed too much weight on defendant's

A-0898-17T4

criminal record because he had no convictions for indictable offenses. He argues the trial court should have considered the hardship that incarceration would have on his family and minor child, and taken into consideration defendant's intellectual limitations. Defendant argues the court should have considered the victim's wish to sentence him to a lower range.

Our review of a sentencing determination is limited. See State v. Roth, 95 N.J. 334, 364-65 (1984). We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). We must determine whether the "aggravating and mitigating factors found by the sentencing court were . . . based upon competent and credible evidence in the record." Ibid. Also, we consider whether the "sentence [is so] clearly unreasonable so as to shock the judicial conscience." Ibid. We discern no abuse of discretion in this case.

The court found aggravating factors three (the risk that defendant will commit another offense), N.J.S.A. 2C:44-1(a)(3); six (defendant's prior criminal record), N.J.S.A. 2C:44-1(a)(6); and nine (the need for deterrence), N.J.S.A. 2C:44-1(a)(9). Based on the presentence report, the trial court noted defendant was a multi-state offender, who had "multiple juvenile adjudications." He had a number of municipal court convictions. His criminal record showed an

escalation in criminal conduct. This record supported the finding that there was a need for deterrence.

Defendant argues the court erred by not finding application of mitigation factor eleven (excessive hardship to himself or his dependents), N.J.S.A. 2C: 44-1(b)(11). However, there was no evidence defendant was the primary caretaker for his young son, or that his imprisonment would cause hardship beyond that entailed by incarceration.

Defendant argues the trial court should have considered as mitigating the report from Avenel that assessed defendant's intellectual functioning as severely deficient. However, there was no evidence that defendant could not understand the charges against him, and the crime itself indicated a level of planning that would negate or question the claimed deficiency.

The court was not required to sentence defendant at the lower end of the range, even if the victim requested this. The trial judge found based on Mary's testimony that "harm was inflicted" on her as a result of defendant's actions. The trial court did not abuse its discretion in sentencing defendant. It made sufficient findings, there was ample evidence in the record to support them and the sentence does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19

A-0898-17T4